```
 1
 2
 3
 4
 5
 6
 7
 8                      UNITED STATES DISTRICT COURT
 9                    EASTERN DISTRICT OF CALIFORNIA
10                             ----oo0oo----
11
12  JENNIFER HUH,                      No.  2:19-cv-00170-WBS-KJN
13              Plaintiff,
14       v.                            ORDER RE: MOTION TO DISMISS
15  MONO COUNTY OFFICE OF EDUCATION;
    STACEY ADLER; and DOES 1 through
16  30, inclusive,
17              Defendants.
18
                                ----oo0oo----
19
            Plaintiff Jennifer Huh brought this action asserting
20
    violations of 42 U.S.C. § 1983 and state law arising out of her
21
    employment and subsequent termination by defendant Mono County
22
    Office of Education ("Mono County").  Presently before the court
23
    is defendant Mono County's Motion to Dismiss.  (Docket No. 15.)
24
    I.   Factual and Procedural Background
25
            Between January 2011 and June 2018, plaintiff was
26
    employed by defendant Mono County.  (First Amended Complaint
27
    ("FAC") ¶ 17.)  Starting in July 2017, plaintiff served as Mono
28
                                    1
```

County's Deputy Superintendent. (Id. ¶ 20.) As Deputy Superintendent, plaintiff reported directly to defendant Adler, who was the Superintendent for defendant Mono County. (Id.) Plaintiff alleges that several months after she began work as Deputy Superintendent, she learned that defendant Adler was issuing stipend checks to herself and others. (Id. ¶ 21.) Plaintiff claims that defendant Adler did not properly account for these stipends. (Id.) Plaintiff further alleges that she thought the stipend payments were illegal and that she asked defendant Adler about them in both August and September 2017. (Id. ¶¶ 22-23.) Adler allegedly "offered to issue [p]laintiff a payment herself, apparently in an effort to silence [p]laintiff about the illegal 'stipends.'" (Id. ¶ 23.) Plaintiff subsequently reported Adler's conduct to the Mono County Office of Education's Board of Trustees. (Id. ¶ 24.) Plaintiff alleges that following that report, Adler began treating her with hostility. (Id. ¶ 25.)

Starting in or around January 2018, plaintiff launched a political campaign for the position of Superintendent of Mono County's Office of Education. (Id. ¶ 28.) Plaintiff's campaign became public knowledge on or around January 26, 2018. (Id.) Approximately one week later, on February 4, 2018, defendant Alder relieved plaintiff of her human resources and cabinet responsibilities and, in doing so, stripped her of the ability to scrutinize defendant Alder's alleged stipend payments to herself and others. (Id. ¶ 29.) Plaintiff, believing that this demotion was a retaliatory act that violated the Education code, reported it to the Board of Trustees in February 2018. (Id. ¶ 30.)

In March 2018, allegedly in her capacity as a private citizen and political candidate, plaintiff spoke to the press about the stipend payments Adler made to herself and others. (Id. ¶ 32.) Plaintiff alleges that on or around March 13, 2018, defendant Adler, who was running for re-election as Superintendent, sought plaintiff's personnel file from Mono County's human resources department. (Id. ¶ 33.) Plaintiff alleges that the human resources department sent plaintiff's personnel file to Adler's political campaign only under protest. (Id.) Plaintiff further alleges that on or around March 14, 2018, she informed defendant Adler that she was aware that Adler improperly requested her personnel file for political purposes. (Id. ¶ 34.)

Plaintiff alleges that in or around April 2018 Mono County sent her an "Intent to Return" letter for the renewal of her employment with defendant. Plaintiff alleges that she and Mono County "mutually understood that the submission by [d]efendant to [p]laintiff of an Intent to Return letter constituted an offer for continued employment for the term of July 1, 2018-June 30, 2019, under [d]efendants' policies and/or practices." (Id. ¶ 35.) Plaintiff promptly signed and returned the Intent to Return letter; subsequently, the human resources department finalized plaintiff's employment contract for the period between July 1, 2018 and June 30, 2019. (Id. ¶ 36.) Despite this, on June 29, 2018, defendant Adler allegedly told plaintiff that her contract would not be renewed. (Id. ¶ 39.) Plaintiff alleges that defendants did not give her notice or the opportunity for a hearing on the revocation of her contract

renewal. (Id. ¶ 41.) Plaintiff further alleges that defendant Adler decided to revoke the renewal of plaintiff's employment contract in retaliation for her protests and reports about Adler's allegedly improper activities and/or plaintiff's political speech and campaign. (Id. ¶ 40.)

II. Legal Standard

On a motion under Federal Rule of Civil Procedure Rule 12(b)(6), the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

III. Discussion

A. Violation of First Amendment free speech rights

When the government acts "as both a sovereign and employer," the constitutionality of its regulations on speech are analyzed using the multi-factor test set forth in Pickering v. Board of Education of Township High Sch. District 205, Will County, Illinois 391 U.S. 563 (1968). See Johnson v. Poway Unified School Dist., 658 F.3d 954, 961 (9th Cir. 2011)(emphasis in original). The Ninth Circuit clarified Pickering's framework in Eng v. Cooley, 552 F.3d 1062 (9th Cir. 2009). Noting that

4

"First Amendment retaliation law has evolved dramatically" in "the forty years since Pickering," the Ninth Circuit extracted from Pickering and subsequent related First Amendment cases "a sequential five-step" test. Eng, 552 F.3d at 1070. That test asks: "(1) whether the plaintiff spoke on a matter of public concern"; "(2) whether the plaintiff spoke as a private citizen or public employee"; "(3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action"; "(4) whether the state had an adequate justification for treating the employee differently from other members of the general public"; and "(5) whether the state would have taken the adverse employment action even absent the protected speech." Id.

The plaintiff bears the burden of satisfying steps one through three of the Eng test. Id. at 1070-71. Once the plaintiff has passed the first three steps, the government bears the burden of showing that either its legitimate administrative interests outweigh the plaintiff's First Amendment rights or that the adverse employment decision would have been made regardless of the employee's protected conduct. See Id. at 1071-72 (internal citations omitted).

Eng step one asks "whether the plaintiff spoke on a matter of public concern." Eng, 552 F.3d at 1070. "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" Johnson v. Multnomah Cty., 48 F.3d 420, 422 (9th Cir. 1995) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). In the instant case, plaintiff's speech

clearly touched on matters of public concern, i.e., the use of public funds and alleged self-dealing by a public official. See Conaway v. Smith, 853 F.2d 789, 797 (10th Cir. 1988) (applying Pickering test and finding that "[s]peech that seeks to expose improper operations of the government or questions the integrity of governmental officials clearly concerns vital public interests."); Propst v. Bitzer, 39 F.3d 148, 152 (7th Cir. 1994)(applying Pickering test and holding that speech regarding misuse of public university funds touched on matter of public concern).

Eng step two asks "whether the plaintiff spoke as a private citizen or public employee." Eng, 552 F.3d at 1070. Speech made as an employee, not as a private citizen, is "not protected because any restriction on that speech 'simply reflects the exercise of employer control over what the employer itself has commissioned.'" Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1125 (9th Cir. 2008) (quoting Garcetti, 547 U.S. at 422, 1951); see also Garcetti, 547 U.S. at 421-22 (the First Amendment "does not invest [public employees] with a right to perform their jobs however they see fit").

Defendants correctly assert that plaintiff was speaking as a public employee when she reported defendant Adler's conduct to the Board of Trustees in September 2017. (Mot. to Dismiss at 6 (discussing FAC. ¶ 24).) However, defendants' argument that plaintiff did not speak as a private citizen when she launched her political campaign in January 2018 or responded to newspaper inquiries in March 2018 (Reply in Supp. of Mot. to Dismiss at 2 (Docket No. 22)) is unavailing. Substantial case law supports

6

plaintiff's assertion that when she ran for office and made public statements about Adler's stipend payments in the course of campaigning, she was speaking as a private citizen, not a public employee. See Heffernan v. City of Paterson, N.J., 136 S. Ct. 1412, 1417 (2016)("[w]ith a few exceptions, the Constitution prohibits a government employer from discharging or demoting an employee because the employee supports a particular political candidate."); Brickey v. Hall, 828 F.3d 298, 305 (4th Cir. 2016)(noting that "speaking as a political candidate weighs in favor of speech" in context of a First Amendment retaliation claim brought by police officer).[1]

Eng step three considers "whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action." Eng, 552 F.3d at 1070. Defendants contend that plaintiff has not sufficiently alleged "a causal

---

[1] In its Reply in Support of its Motion to Dismiss, defendant cites Borzilleri v. Mosby, 874 F.3d 187, 190 (4th Cir. 2017). (See Reply in Supp. of Mot. to Dismiss at 2-3 (Docket No. 22).) That case was brought by an assistant prosecutor whose employment was terminated shortly after the State's Attorney, whose political candidacy plaintiff had opposed, assumed office. In holding that the plaintiff's First Amendment rights were not violated by that termination, the Fourth Circuit relied on the Supreme Court's holdings Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980). Those cases stand for the proposition that public officials' First Amendment right to political speech are circumscribed where those officials are policymakers and the "hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Id. at 518. In the instant case, no allegations suggest that Huh's party affiliation had any bearing on the effective performance of her work and, in the absence of a showing that Huh is a "policymaker" under Elrod and Branti, any analogy between Borzilleri and the instant case is inapposite.

7

relationship between the alleged constitutionally protected activity and the adverse action." (Mot. to Dismiss at 6-7.) The court disagrees. Plaintiff's complaint alleges that about a week after her the public announcement of her political campaign in the newspaper, she was stripped of her human resources responsibilities by defendant Adler (FAC ¶ 29); it further alleges that a few months after she responded to newspaper inquiries about Adler's stipend payments, her employment was terminated. (FAC ¶ 39.) Given these allegations, plaintiff has stated a claim, plausible on its face, that her protected speech was a substantial or motivating factor in the adverse employment action.[2]

In light of the complaint's allegations regarding plaintiff's: (a) speech on matters of public concern; that she (b) made in her capacity as a private citizen; and that (c) was plausibly a motivating factor behind adverse employment actions, plaintiff has plausibly stated a claim for violation of the First Amendment. The burden thus shifts to defendant to show either that "the state had an adequate justification for treating the [plaintiff] differently from other members of the general public" or that "the state would have taken the adverse employment action

---

[2] Defendant argues, confusingly, that "[p]laintiff disclosing the information seven months later during a political campaign is insufficient to establish a causal relationship between the alleged constitutionally protected activity and the adverse action." (Reply in Supp. of Mot. to Dismiss at 3.) This contention misstates plaintiff's argument. The protected speech at issue in plaintiff's First Amendment claim is not her September 2017 report to the Board of Trustees, but rather her political activities in early 2018. These activities were allegedly followed by adverse employment actions. The fact that they were preceded by plaintiff's September 2017 report to the Board of Trustees is not relevant to the court's analysis under Pickering.

8

even absent the protected speech." See Eng, 552 F.3d at 1070. Because of the current absence of such a showing by defendants, the court will deny defendants' Motion to Dismiss the First Count of plaintiff's complaint.

B. Plaintiff's property interest, or lack thereof, under 42 U.S.C. Section 1983

Defendants move to dismiss plaintiff's claim for violation of the Fourteenth Amendment on the ground that plaintiff has not plausibly alleged she had a protected property interest in her employment with Mono County.

A 42 U.S.C. § 1983 claim based on deprivation of procedural due process has three elements: 1) a liberty or property interest protected by the constitution; 2) a deprivation of the interest by the government; and 3) lack of process. Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).

Here, plaintiff has not pointed to any statute, and the court is not aware of any, that "limits the grounds on which [the plaintiff] can be discharged." See Dyack, 317 F.3d at 1033. Moreover, though plaintiff claims she had a "binding contract" with defendant for the term of July 1, 2018 through June 30, 2019, plaintiff does not allege that the letter of intent she signed explicitly stated she could not be terminated except for cause. (See FAC ¶¶ 35-37.)

Plaintiff's opposition to defendants' Motion to Dismiss relies heavily on the Supreme Court's ruling in Perry v. Sindermann, 408 U.S. 593 (1972). In that case, the Supreme Court held that a person's interest in a governmental benefit is a

"property interest" subject to procedural due process if the entitlement is supported by "rules or mutually explicit understandings." See id. at 601. However, unlike the plaintiff in Perry, plaintiff does not point to any specific policy or procedure that justifies her belief she was entitled to be terminated only for cause.[3]

For the above reasons, the allegations in the complaint do not make out a plausible claim that plaintiff had a protected property interest in her employment with Mono County. Accordingly, the court will grant defendants' Motion to Dismiss as to the second count of plaintiff's complaint.

C. Motion to Strike

Federal Rule of Civil Procedure 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Defendants move this court to strike plaintiff's prayer for punitive damages as to both defendant Mono County and defendant Adler.

Defendants argue that plaintiff's claims for punitive damages as to defendant Mono County should be stricken because punitive damages are not, as a matter of law, available against public entities.

---

[3] In Perry, the plaintiff alleged that his claim of entitlement was justified in part by a provision in his employer's faculty guide that state the employer "wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work." Perry, 408 U.S. at 600.

10

At the hearing on July 15, 2019, counsel for plaintiff admitted that she was not seeking punitive damages against defendant Mono County and indicated that if given leave to amend the complaint, she would clarify her pleadings to specify that she was only seeking punitive damages from defendant Adler. With this understanding, defendant's Motion to Strike is moot as to plaintiff's putative punitive damages claims against defendant Mono County.

Defendant Adler provides no support for his contention that plaintiff's prayer for punitive damages is "an insufficient defense" or "redundant, immaterial, impertinent, or scandalous." See Fed. R. Civ. Pro. 12(f). Accordingly, the court will deny defendants' Motion to Strike plaintiff's claims for punitive damages against Adler. In doing so, the court expresses no opinion as to the adequacy of plaintiff's claim for punitive damages under Federal Rule of Civil Procedure 12(b)(6).

D. State Law Claims

At the July 15, 2019, hearing on this motion, the court indicated its intention to grant plaintiff leave to file a second amended complaint, and plaintiff indicated her intention to do so. Because the court anticipates the filing of a second amended complaint in this case within the next thirty days, it declines to rule on defendants' Motion to Dismiss plaintiff's third and fourth claims at this time. If plaintiff reasserts those claims in her second amended complaint, defendants may renew their motion to dismiss those claims.

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss (Docket No. 15) be, and hereby is, GRANTED with respect

11

to plaintiff's second claim.  Plaintiff's second claim for violation of the Fourteenth Amendment is DISMISSED without prejudice.

IT IS FURTHER ORDERED that defendants' Motion to Dismiss is DENIED with respect to plaintiff's first claim.

IT IS FURTHER ORDERED that defendants' Motion to Strike (Docket No. 15) be, and hereby is, DENIED.

Plaintiff is given 30 days from the date of this order to file an amended complaint consistent with this order.

Dated:   July 19, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE